# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

JUANITA J. TIPPIN                                                                                    PLAINTIFF

V.                                      NO. 4:18CV00804 BRW/PSH

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION[1]                                                DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Juanita J. Tippin, applied for disability benefits on June 30, 2016, alleging a disability onset date of April 1, 2010.[2] (Tr. at 10). The application was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Tippin's claim. (Tr. at 23). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Tippin has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] Ms. Tippin amended her alleged onset date to June 30, 2016, the date of her application. (Tr. at 70).

## II. The Commissioner's Decision:

The ALJ found that Ms. Tippin had not engaged in substantial gainful activity since the amended alleged onset date of June 30, 2016. (Tr. at 12). At Step Two of the sequential five-step analysis, the ALJ found that Ms. Tippin had the following severe impairments: hypertension, asthma, degenerative disc disease of the lumbar spine, obesity, borderline intellectual functioning, depression, and anxiety. *Id.*

The ALJ found that Ms. Tippin's impairments did not meet or equal a listed impairment. *Id.* Before proceeding to Step Four, the ALJ determined that Ms. Tippin had the residual functional capacity ("RFC") to perform work at the light level, with limitations. (Tr. at 15). She would need a job which would be performed in a controlled environment, not exposed to dust, fumes, or smoke in concentrated amounts, and not exposed to temperature extremes. *Id.* She would be limited to simple tasks with simple instructions, and incidental (infrequent) contact with the public. *Id.*

The ALJ next found that Ms. Tippin was unable to perform any of her past relevant work. (Tr. at 21). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Tippin's age, education, work experience and the RFC for light work, jobs existed in significant numbers in the national economy that she could perform, such as price marker, routing clerk, and garment sorter. (Tr. at 22). The ALJ also determined, based on VE testimony, that Ms. Tippin could perform the sedentary jobs of circuit board assembler and toy stuffer. *Id.* Therefore, the ALJ found that Ms. Tippin was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is

supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

    B.   Ms. Tippin's Arguments on Appeal

Ms. Tippin contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ did not properly develop the record, he failed to assess many of her impairments as severe at Step Two, and the RFC did not fully incorporate Ms. Tippin's limitations. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Much of the record contains medical evidence which predates the relevant time-period. The ALJ did give some weight to consultative examiner reports from before the relevant time-

3

period, which did not reveal disabling conditions. Dr. Ted Honghiran, M.D., conducted an orthopedic examination on December 6, 2011. (Tr. at 648-651). He found that Ms. Tippin was markedly overweight at about 300 lbs. and 5'3" tall. *Id*. He found she could walk normally, get on her heels and toes, dress and undress herself, and get on and off the examination table without difficulty. *Id*. She had negative straight-leg raises and normal reflexes and no acute muscle spasms. *Id*. A lumbar spine x-ray was normal, and a left knee x-ray showed some osteoarthritis. *Id*. Dr. Honghiran concluded that Ms. Tippin had chronic pain from obesity and osteoarthritis. He did not assign any functional restrictions. *Id*.

Dr. Steve Shry, Ph.D., evaluated Ms. Tippin on April 28, 2014. (Tr. at 838-841). Dr. Shry reviewed records from Counseling Associates, where Ms. Tippin had begun therapy a few months prior. *Id*. She had not had inpatient psychiatric treatment. *Id.* Ms. Tippin had a normal mental status examination, but Dr. Shry diagnosed her with borderline intellectual functioning based on an Intelligence Scale test. (Tr. at 840). He also diagnosed learning disorder, anxiety, and depression. *Id.* However, he stated that she was not significantly impaired in concentration, communication, or ability to complete work tasks. (Tr. at 841). He said that she may be significantly impaired in ability to sustain persistence under stress. *Id.*

Ms. Tippin received therapy and medication management at Counseling Associates for over a year. During that time, although she suffered situational exacerbations of anxiety, depression, and PTSD, she generally improved with therapy. (Tr. at 404, 410, 430, 936, 944, 972, 978). She was processing past abuse, identifying positive thoughts, improving mood, and increasing self-esteem and motivation. *Id*. Ms. Tippin went to the to the hospital because of an intentional overdose on April 10, 2016, but later said that "it was not a suicide attempt" and she

4

was not a harm to herself or others. (Tr. at 37-58, 480). At intake at the hospital she was alert, attentive, and cooperative with appropriate mood and affect. (Tr. at 37, 40). She was discharged in stable condition and told to continue her medications as prescribed. (Tr. at 58).

In June 2016, Ms. Tippin was terminated by Counseling Associates for failing to appear for appointments. (Tr. at 488). She received no more mental health treatment during the relevant time-period, save for medication management from her PCP, Dr. James E. Nolen, M.D.

In 2017, two state-agency reviewing psychiatric practitioners found that Ms. Tippin was moderately limited in some areas of work functions, and would be limited to unskilled work. (Tr. at 151-185, 178-184). The ALJ gave these opinions great weight. The RFC reflected those opinions.

Transitioning to Ms. Tippin's allegations of chronic back pain, the objective imaging revealed some mild-to-moderate conditions (osteoarthritis, spondylosis, radiculopathy), but nothing requiring aggressive treatment. (Tr. at 522, 786, 871, 1014). Ms. Tippin had two epidural steroid injections, one of which was beneficial. (Tr. at 78-86). She stopped seeing a pain management specialist and returned to Dr. Nolen for management of her pain. (Tr. at 86-87). Dr. Nolen noted that pain medications were helpful. (Tr. at 997). In December 2016 and July 2017, Dr. Nolen found that Ms. Tippin had no gross motor deficits and a normal gait. (Tr. at 515, 997). Treatment notes did not reveal that Dr. Nolen placed any functional restrictions on Ms. Tippin; he continued conservative medication management.

Moreover, Ms. Tippin said she could do a variety of daily activities, which undermines her claims of disabling pain. She could fix meals, shop in stores, do some light chores, drive in a car, read, watch TV, and visit with her friend. (Tr. at 321-323). Inconsistencies between subjective

5

complaints of pain and daily living patterns diminish credibility. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). Also, multiple doctors told Ms. Tippin to lose weight and exercise to minimize both her physical and mental symptoms, but she still remained "super obese" in 2017. (Tr. at 1024-1026).

Dr. Tim Freyaldenhover, M.D. submitted a medical source statement dated February 27, 2017. (Tr. at 1023-1031). Despite Ms. Tippin's complaint of pain and numbness in her right foot, he found normal muscle strength and tone, normal gait, and only mild difficulties with heel-toe walking and tandem walking. (Tr. at 1025). Dr. Freyaldenhover suspected radiculopathy (confirmed by nerve conduction testing in April 2017), fibromyalgia, carpal tunnel syndrome, and neuropathy. (Tr. at 522, 1026). He discussed better nutrition to guard against headaches and sleep problems. *Id*. He continued her current antidepressant and anti-anxiety medication. *Id*. He did not place any restrictions on Ms. Tippin.

Dr. Nolen opined on February 19, 2017, that Ms. Tippin was not able to perform even sedentary work, but the ALJ found this to be inconsistent with his own treatment notes. Dr. Nolen's clinical examinations showed normal gait and muscle tone (Tr. at 515, 997, 1025), objective testing showed mild-to-moderate conditions, Dr. Nolen treated Ms. Tippin conservatively with medication, which he said was helpful, and he did not place any restrictions on her throughout his treatment. The ALJ properly gave Dr. Nolen's RFC statement little weight. (Tr. at 20).

Ms. Tippin asserts that the ALJ should have found fibromyalgia, migraines, neurodevelopment disorders, and PTSD to be severe impairments. While Ms. Tippin may have experienced these conditions, a diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898

F.2d 1361, 1364 (8th Cir. 1990). She did not require aggressive treatment for fibromyalgia or migraines, and she could still do most activities of daily living. As for the mental impairments, the consultative and reviewing doctors found only mild-to-moderate mental restrictions, and her improvement and positive response to treatment with Counseling Associates bears that out. Moreover, Ms. Tippin dropped out of counseling, which does not support her contentions that mental illness was disabling. While she says that the ALJ did not properly consider her borderline intellectual functioning, he did find that to be a severe impairment, but he also observed that she did not have problems performing most mental functions adequately. (Tr. at 12-17).

Likewise, Ms. Tippin's argument that the ALJ should have further developed the record fails. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving her disability; the ALJ does not have to play counsel for the Plaintiff. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). At the hearing, Ms. Tippin's attorney did not suggest further development was required. And Ms. Tippin bore the burden of producing supporting evidence from the relevant time-period. She did not submit much. What she did submit did not demonstrate that her conditions had deteriorated to such a point that further examinations were required. The ALJ based his decision on a fully developed record.

Finally, for the reasons above, the RFC for light work with some additional restrictions fully incorporated Ms. Tippin's limitations. Objective findings were mild, treatment was conservative (and helpful), Ms. Tippin was noncompliant with treatment, and she was able to

perform activities of daily living.

## VI. **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Ms. Tippin was not disabled. The record was fully developed, the ALJ did not err at Step Two, and the RFC fully incorporated Ms. Tippin's limitations. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 12th day of December, 2019.

_____
UNITED STATES MAGISTRATE JUDGE